## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALNYLAM PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23-00578-CFC |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| PFIZER INC. and PHARMACIA & UPJOHN CO. LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, and BIONTECH MANUFACTURING GMBH, | ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALNYLAM PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

## RESPONSE TO COMPLAINT FOR PATENT INFRINGEMENT

Defendants Pfizer Inc. ("Pfizer") and Pharmacia & Upjohn Co. LLC ("Pharmacia") (collectively, "Pfizer" or "Defendants") hereby answer the Complaint for Patent Infringement ("Complaint") filed by Plaintiff Alnylam Pharmaceuticals, Inc. ("Plaintiff" or "Alnylam").

## NATURE OF THE ACTION

1.     Alnylam is a pioneering RNA therapeutics company based in Cambridge, Massachusetts. Over a decade ago, Alnylam invented a breakthrough class of protonatable biodegradable lipids used to form lipid particles that carry and safely deliver in the body RNA-based therapeutics or vaccines (the "Alnylam Lipid Particle Technology"). The Alnylam Lipid Particle Technology is foundational to the success of the recently developed messenger RNA ("mRNA") based COVID vaccines. The United States Patent Office repeatedly recognized Alnylam's inventive work, including by issuing United States Patent Nos. 11,633,479 (the "'479 Patent"), 11,633,480 (the "'480 Patent"), 11,612,657 (the "'657 Patent"), and 11,590,229 (the "'229 Patent") (collectively, the "Patents-in-Suit"), which are four of the patents that protect the

Alnylam Lipid Particle Technology.  (Exhibits 1, 2, 3, and 4.) The '479 Patent issued from U.S. Application No. 17/651,017 (the "'017 Application"). (Exhibit 1.) The '480 Patent issued from U.S. Application No. 17/651,023 (the "'023 Application"). (Exhibit 2.) The '657 Patent issued from U.S. Application No. 17/651,038 (the "'038 Application"). (Exhibit 3.) The '229 Patent issued from U.S. Application No. 17/651,029 (the "'029 Application"). (Exhibit 4.)

**RESPONSE:**  Pfizer admits that the Patent and Trademark Office issued the '479, '480, '657, and '229 Patents, but denies that any of the Patents-in-Suit claim patentable inventions. Pfizer denies that any technology claimed by the Patents-in-Suit contributed in any way to the success of the recently-developed mRNA based COVID-19 vaccine developed by Pfizer and BioNTech. Pfizer otherwise lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 and therefore denies the allegations.

2.     Defendants infringe Alnylam's '479 Patent through the use of ALC-0315,[1] a lipid compound used in Defendants' COVID-19 Vaccine.  Similarly, Defendants infringe the '480 Patent through the use of ALC-0315, which is formulated into a lipid particle that protects and delivers the vaccine's mRNA.  Defendants infringe Alnylam's '657 Patent and '229 Patent through the use of Alnylam's patented lipid particles that protect and deliver Defendants' COVID-19 Vaccine's mRNA.  The "Defendants' Infringing Lipid Particles" comprise four lipids: ALC-0315 (a protonatable biodegradable lipid), 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide (a PEG-modified lipid), 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC), and cholesterol. (Exhibit 28 at 8.)

**RESPONSE:**  Paragraph 2 states legal conclusions to which no response is required. To the extent a response is required, Pfizer denies that COMIRNATY®, including any of its components, infringes the Patents-in-Suit. Pfizer admits that COMIRNATY® contains ALC-0315,   2-(polyethylene   glycol2000)-N,N-ditetradecylacetamide,   1,2-distearoyl-sn-glycero-3-phosphocholine and cholesterol, none of which were invented by Alnylam. Pfizer denies all of the remaining allegations of Paragraph 2.

---

[1]   ALC-0315's  chemical  name  is  ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis  (2-hexyldecanoate).

3.     Alnylam brings this action to recover monetary compensation for Defendants' unlicensed use of Alnylam's Patents-in-Suit.  Alnylam does not seek injunctive relief under 35 U.S.C. § 283 against such use.

**RESPONSE:**  Pfizer admits that the Complaint purports to state that Alnylam does not seek injunctive relief under 35 U.S.C. § 283, but seeks to recover monetary compensation. Pfizer denies all of the remaining allegations of Paragraph 3.

**THE PARTIES**

4.     Plaintiff Alnylam is a corporation organized under the laws of the State of Delaware with a principal place of business at 675 West Kendall Street, Henri A. Termeer Square, Cambridge, Massachusetts 02142.  Founded in 2002, Alnylam is a groundbreaking life science company that has worked to harness the potential of RNA interference ("RNAi") therapeutics to transform the lives of people living with diseases that have limited or inadequate treatment options. Utilizing an earlier version of in-licensed Lipid Particle Technology, in 2018 Alnylam delivered the world's first approved RNAi therapeutic, ONPATTRO® (patisiran).  ONPATTRO® is currently approved for the treatment of polyneuropathy caused by an illness called hereditary ATTR (hATTR) amyloidosis.  Alnylam has developed an additional delivery modality termed GalNAc Delivery, which is utilized in three marketed products, GIVLAARI® (givosiran), approved in 2019, and OXLUMO® (lumasiran), approved in 2020, both marketed by Alnylam and LEQVIO® (inclisiran), approved in 2021, developed initially by Alnylam and licensed to Novartis.

**RESPONSE:**  Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 and therefore denies the allegations.

5.     Alnylam has a long history of licensing or offering to license to third parties its intellectual property, including the Alnylam Lipid Particle Technology and the GalNAc Technology.

**RESPONSE:**  Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 and therefore denies the allegations.

6.     Upon information and belief, Defendant Pfizer Inc. is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, New York 10017.  The Biologic License Approval ("BLA") Approval for COMIRNATY® is addressed to Pfizer Inc., 500 Arcola Road, Collegeville, PA 19426. (Exhibit 5 at 1.)  Upon information and belief, all regulatory correspondence regarding Defendants' COVID-19 Vaccine is sent to Pfizer Inc.'s principal place of business.  (*Id.*)  The prescribing information for COMIRNATY®[2] states it is "[m]anufactured by Pfizer Inc." (*Id.*, Exhibit 6 at 78, Exhibit 7 at 26, Exhibit 8 at 24.)  Upon information and belief, Defendant Pfizer Inc. maintains one or more

---

[2] Defendants' mRNA COVID-19 Vaccine is approved under the tradename COMIRNATY®.

facilities, including in Kalamazoo, Michigan, under the name PfizerCentre One, as a subsidiary of Pfizer Inc. and/or Defendant Pfizer Inc. is doing business as PfizerCentre One at one or more facilities, including in Kalamazoo, Michigan.  Upon information and belief, Pfizer Laboratories, a division of Defendant Pfizer Inc., prepared the package insert for COMIRNATY® that was accepted by the FDA.  (Exhibit 6 at 78; Exhibit 7 at 26; Exhibit 8 at 24.)  Upon information and belief, Defendant Pfizer Inc. recognizes the revenue from sales of Defendants' COVID-19 Vaccine.   (Exhibit 9 at 1, 4, 5, 14, 27, 29, 33-36; Exhibit 10 at 1, 4, 5, 6, 15, 21-22, 27, 28-29, 32-36, 42, 65, 67-69.)

**RESPONSE:**  Pfizer admits that Pfizer is a Delaware corporation with a principal place of business at 66 Hudson Boulevard, New York, New York 10017. Pfizer admits that Exhibit 5 purports to be the BLA Approval for COMIRNATY® and appears to be addressed to Pfizer Inc., 500 Arcola Road Collegeville, PA 19426. (Exhibit 5 at 1.) The purported BLA Approval for COMIRNATY® is also addressed to BioNTech Manufacturing GmbH. Pfizer admits that Exhibit 6, Exhibit 7, and Exhibit 8 purport to be the prescribing information for COMIRNATY®, which appear to state, "[m]anufactured by Pfizer Inc." (Exhibit 6 at 78, Exhibit 7 at 26, Exhibit 8 at 78.) Pfizer admits that Pfizer maintains a facility in Kalamazoo, Michigan named PfizerCentre One. Pfizer further admits that Exhibit 6, Exhibit 7, and Exhibit 8 purports to be the package insert for COMIRNATY®, which appears to state, "Pfizer Laboratories Div Pfizer Inc." (Exhibit 6 at 78, Exhibit 7 at 26, Exhibit 8 at 24.) Pfizer denies the remaining allegations of Paragraph 6.

7.     Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business at 7000 Portage Road, Kalamazoo, MI 49001.  Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a wholly-owned subsidiary of Defendant Pfizer Inc.  The BLA Approval Letter for COMIRNATY® states that, the product will be "manufactured at … Pharmacia & Upjohn Company LLC,  Kalamazoo, Michigan."  (Exhibit 5 at 1.)

**RESPONSE:**  Pfizer admits that Pharmacia is a Delaware corporation with a principal place of business at 7000 Portage Road Kalamazoo, MI 49001. Pfizer admits that Pharmacia is a subsidiary of Defendant Pfizer Inc. Pfizer admits that the purported BLA Approval Letter for COMIRNATY® appears to state, "[t]he final formulated product will be manufactured, filled,

labeled and packaged at Pfizer Manufacturing Belgium NV, Rijksweg 12, Puurs, Belgium and at Pharmacia & Upjohn Company LLC, 7000 Portage Road, Kalamazoo, Michigan." (Exhibit 5 at 1.) Pfizer denies the remaining allegations of Paragraph 7.

8.      On information and belief, Defendants Pfizer Inc. and Pharmacia & Upjohn Co. LLC are agents of each other and/or work in concert with each other with respect to the development, regulatory approval, marketing, making, sales, offers for sale, import and export, and distribution of Defendants' COVID-19 Vaccine which contain Defendants' Infringing Lipid Particles. One of the lipids in Defendants' Infringing Lipid Particles is ALC-0315.

**RESPONSE:**  Paragraph 8 states legal conclusions to which no response is required. To the extent a response is required, Pfizer admits that Pfizer sought regulatory approval for COMIRNATY® (which does not contain any technology claimed by the Patents-in-Suit) which contains a lipid nanoparticle (which was not invented by Alnylam). Pfizer also admits that the lipid nanoparticle in COMIRNATY® contains ALC-0315 (which also was not invented by Alnylam, nor was any component of the lipid nanoparticle invented by Alnylam). Pfizer further admits Pharmacia manufactures COMIRNATY® on behalf of Pfizer. Pfizer denies the remaining allegations of Paragraph 8.

## JURISDICTION AND VENUE

9.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

**RESPONSE:**  Paragraph 9 states legal conclusions to which no response is required. To the extent a response is required, Pfizer admits that the Complaint purports to state a claim for infringement arising under the patent laws of the United States 35 U.S.C. § 1, *et seq*. Pfizer denies the remaining allegations of Paragraph 9.

10.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

**RESPONSE:** Paragraph 10 states legal conclusions to which no response is required. To the extent a response is required and for purposes of this action only, Pfizer does not contest that this Court has subject matter jurisdiction over this action.

11.     This Court has personal jurisdiction over Defendant Pfizer Inc. because it is a Delaware corporation.

**RESPONSE:** Paragraph 11 states legal conclusions to which no response is required. To the extent a response is required, Pfizer responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction.

12.     This Court also has jurisdiction over Defendant Pfizer Inc. because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing Lipid Particles, which include ALC-0315, throughout the United States, including in this judicial district.

**RESPONSE:** Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Pfizer responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction. Pfizer denies that COMIRNATY®, including any of its components, infringes the Patents-in-Suit.

13.     This Court has personal jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because it is a Delaware corporation.

**RESPONSE:** Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Pfizer responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction.

14.     This Court also has jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, comprising Defendants' Infringing Lipid Particles, including ALC-0315, throughout the United States, including in this judicial district.

**RESPONSE:** Paragraph 14 states legal conclusions to which no response is required. To the extent a response is required, Pfizer responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction. Pfizer denies that

COMIRNATY®, including any of its components, infringes the '479, '480, '657, or '229 Patents directly or indirectly.

15.     Venue is proper with respect to Defendant Pfizer in this Court under 28 U.S.C. § 1400(b) because Defendant Pfizer Inc. is a Delaware corporation.

**RESPONSE:** Paragraph 15 states legal conclusions to which no response is required. To the extent a response is required, Pfizer responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest venue. Pfizer admits that it is a Delaware corporation.

16.     Venue is proper with respect to Defendant Pharmacia & Upjohn Co. LLC in this Court under 28 U.S.C. § 1400(b) because Defendant Pharmacia & Upjohn Co. LLC is a Delaware corporation.

**RESPONSE:** Paragraph 16 states legal conclusions to which no response is required. To the extent a response is required, Pfizer responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest venue.  Pfizer admits that Pharmacia is a Delaware corporation.

## **BACKGROUND**

### A.     **RNA Therapeutics**

17.     The promise of RNA-based therapeutics (including RNAi and mRNA) has long been known, but scientists have struggled for decades to translate the promise into successful human therapeutics.  The main challenge scientists around the world struggled with was how to deliver the fragile, negatively charged RNA into the body's cells in a safe, effective, and non-toxic way. (Exhibit 11 at 1-2.)

**RESPONSE:** The allegations of paragraph 17 purport to rely on Exhibit 11, pages 1-2, which speaks for itself. At least because of the scope, breadth, and vagueness of this allegation, Pfizer lacks knowledge or information sufficient to form a belief as to the truth of allegations of Paragraph 17 and therefore denies the allegations.

18.     One approach was to develop a lipid[3] system for use with RNA-based therapeutics. These lipids would form a lipid particle.  The lipid particle would encapsulate and protect the fragile RNA upon administration to the body so the RNA could be delivered to the cells where the RNA would provide its therapeutic effect.  Because the RNA is negatively charged, certain of the lipids in the lipid particle had to be protonatable to create the protective bubble around the RNA. Protonatable lipids do not exist in nature, and therefore had to be synthesized.  There were toxicity issues with early attempts to use them in therapeutics due to the high dose of lipid particle needed to be effective.

**RESPONSE:**  Pfizer incorporates by reference its response to Paragraph 17 herein. At least because of the scope, breadth, and vagueness of this allegation, Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18 and therefore denies the allegations.

19.     To harness the full promise and power of lipid particles to deliver revolutionary RNA therapies, scientists needed to develop a more potent lipid particle system that could safely and effectively deliver the RNA to the target cells, and then be metabolized and eliminated from the body.

**RESPONSE:**  Pfizer incorporates by reference its response to Paragraph 17 herein. At least because of the scope, breadth, and vagueness of this allegation, Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 and therefore denies the allegations.

20.     Alnylam overcame some of the issues associated with earlier versions of lipid particles using an in-licensed lipid particle system containing the protonatable lipid compound known as MC3, a highly potent molecule.  With MC3, Alnylam developed ONPATTRO®.  MC3, while safe and effective, is more stable in the body and thus has a relatively long half-life.  Alnylam recognized the need for further improvements in lipid particle technology and internally embarked on a research program to develop a new class of lipids with improved properties.

**RESPONSE:** Pfizer admits that Alnylam markets ONPATTRO® which is not an mRNA vaccine. At least because of the scope, breadth, and vagueness of this allegation, Pfizer lacks the

---

[3] A lipid is a molecule that is minimally soluble in water while soluble in nonpolar solvents. Examples include macro biomolecules such as fats, oils, certain vitamins, and hormones.

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of

Paragraph 20 and therefore denies the allegations.

### B.   ALNYLAM'S BREAKTHROUGH BIODEGRADABLE LIPID PARTICLE TECHNOLOGY FOR DELIVERY OF RNA TO CELLS

21.    Over a decade ago, Alnylam scientists solved these pressing issues by inventing a new class of non-natural lipid particles comprising a protonatable lipid with biodegradable groups (*i.e.*, the Alnylam Lipid Particle Technology). Lipid particles with these biodegradable groups protect the RNA until delivery to inside the cell, and then are metabolized and eliminated from the body ensuring no dose-limiting toxicity. Alnylam's seminal work to create these novel biodegradable lipid particles has been employed in potential RNA therapeutics in development and now mRNA-based vaccines.

**RESPONSE:**  At least because of the scope, breadth, and vagueness of this allegation,

Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the

allegations of Paragraph 21 and therefore denies the allegations.

### C.   THE PATENTS-IN-SUIT

22.    Alnylam filed a series of provisional and utility patent applications on its novel protonatable biodegradable lipids. Utility applications disclosing these novel protonatable biodegradable lipids published on February 2, 2012 and August 1, 2013. At least forty-nine patents world-wide have issued to Alnylam based on these groundbreaking inventions described in its provisional and utility patent applications.

**RESPONSE:**  Pfizer admits that "Related U.S. Application Data" appears on the face of

the Patents-in-Suit, which states, "[c]ontinuation of application No. 17/302,311, filed on Apr. 29,

2021, now Pat. No. 11,246,933, which is a continuation of application No. 16/520,183, filed on

Jul. 23, 2019, now Pat. No. 11,071,784, which is a continuation of application No. 14/677,801,

filed on Apr. 2, 2015, now Pat. No. 10,369,226, which is a continuation of application No.

13/708,383, filed on Dec. 7, 2012, now Pat. No. 9,061,063." Pfizer admits patents have issued to

Alnylam in the U.S. and world-wide. Pfizer lacks the knowledge or information sufficient to form

a belief as to the truth of the remaining allegations of Paragraph 22 and therefore denies the

allegations.

23.     On February 28, 2023, The United States Patent & Trademark Office issued the '229 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '229 Patent issued to Alnylam as assignee of the inventors.

**RESPONSE:**  Pfizer admits that the '229 Patent is titled "Biodegradable Lipids for the Delivery of Active Agents" and that an issuance date of February 28, 2023 appears on the face of the '229 Patent. Pfizer admits that on the face of the '229 Patent, Alnylam is listed as an assignee. As to the truth of the remaining allegations of Paragraph 23, Pfizer lacks the knowledge or information sufficient to form a belief and, on that basis, denies the allegations.

24.     The '229 Patent claims a class of vaccines using lipid particles that contain a protonatable lipid compound, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid for use in delivering a nucleic acid, including mRNA, and a method of delivering the same.

**RESPONSE:**  Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and therefore denies the allegations.

25.     Independent claim 27 of the '229 Patent is representative and recites:

A vaccine comprising a lipid particle and a pharmaceutically acceptable diluent, excipient, or carrier, wherein the lipid particle comprises:

(i) a nucleic acid, wherein the nucleic acid comprises RNA,
(ii) 35-65 mol% of a protonatable lipid compound,
(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),
(iv) 15-45 mol% cholesterol, and
(v) 0.5-10 mol% of the PEG-modified lipid

wherein the mol% is based on 100% total moles of lipids in the lipid particle,

wherein the protonatable lipid compound comprises a head group, hydrophobic tails, and a central moiety to which the head group and the hydrophobic tails are directly bonded, wherein:

the central moiety is a nitrogen atom;
the hydrophobic tails consist of two hydrophobic tails;
each of the two hydrophobic tails has the formula $-R^{12}-M^1-R^{13}$, wherein:

$R^{12}$ is a C1-C14  alkyl group,

$M^1$ is -OC(O)-, and

$R^{13}$ is a $C_{10}$-$C_{20}$ branched alkyl, wherein $R^{13}$ is branched at the alpha

position relative to the -OC(O)- group;

the chain length of formula -$R^{12}$-$M^1$-$R^{13}$ is 17 atoms; and

the total carbon atom content of each hydrophobic tail is 21 to 26 carbon
atoms.

(Exhibit 4 at Claim 27.)

**RESPONSE:** Pfizer admits that claim 27 of the '229 Patent recites the above claim

language. Pfizer denies the remaining allegations of Paragraph 25.

26.     The '229 Patent has been owned by Alnylam at all times, is fully maintained, and
is valid and enforceable.

**RESPONSE:** Pfizer admits that on the face of the '229 Patent, Alnylam is listed as an

assignee. Pfizer denies that the '229 Patent is valid and enforceable. Pfizer lacks the knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26

and on that basis denies the allegations.

27.     On March 28, 2023, The United States Patent & Trademark Office issued the '657
Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '657 Patent issued
to Alnylam as assignee of the inventors.

**RESPONSE:** Pfizer admits that the '657 Patent is titled "Biodegradable Lipids for the

Delivery of Active Agents" and that an issuance date of March 28, 2023 appears on the face of the

'657 Patent. Pfizer admits that Alnylam is listed as an assignee on the face of the '657 Patent.

Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 27 and, on that basis, denies the allegations.

28.     The '657 Patent claims a pharmaceutical composition having a lipid particle that
can be used for the delivery of an active agent, including mRNA. Each lipid particle contains a
plurality of protonatable lipid compounds.  Additional dependent claims including a method of
delivering a nucleic acid by administering the claimed pharmaceutical composition.

11

**RESPONSE:** Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 and therefore denies the allegations.

29.    Independent claim 15 of the '657 Patent is representative and recites:

A pharmaceutical composition comprising a lipid particle and a pharmaceutically acceptable diluent, wherein the lipid particle comprises:

(i) a nucleic acid,
(ii) about 45-65 mol % of a protonatable lipid compound,
(iii) about 5-10 mol % distearoylphosphatidylcholine (DSPC),
(iv) about 25-40 mol % of cholesterol,
(v) 0.5-5 mol % of a PEG-modified lipid,

wherein the mol % is based on 100% total moles of lipids in the lipid particle;

wherein the nucleic acid comprises an RNA;

wherein the protonatable lipid compound comprises a head group, hydrophobic tails, and a central moiety to which the head group and the two hydrophobic tails are directly bonded, wherein:

the central moiety is a nitrogen atom;

the hydrophobic tails consist of two identical hydrophobic tails;

and each hydrophobic tail has the formula —$R^{12}$-$M^1$-$R^{13}$, wherein:

$R^{12}$ is a $C_4$-$C_{14}$ alkyl group; $M^1$ is —$OC(O)$—;

$R^{13}$ is a $C_{10}$-$C_{20}$ alkyl group that is branched at the $\alpha$-position relative to $M^1$;

the chain length of formula —$R^{12}$-$M^1$-$R^{13}$ is from 17 to 24 atoms; and

the total carbon atom content of each hydrophobic tail is 21 to 26 carbon atoms.

(Exhibit 3 at Claim 15.)

**RESPONSE:**  Pfizer admits that claim 15 of the '657 Patent recites the above claim language. Pfizer denies the remaining allegations of Paragraph 29.

30.     The '657 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

**RESPONSE:**  Pfizer admits that on the face of the '657 Patent, Alnylam is listed as an assignee. Pfizer denies that the '657 Patent is valid and enforceable. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 30 and on that basis denies the allegations.

31.     On April 25, 2023, The United States Patent & Trademark Office issued the '479 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '479 issued to Alnylam as assignee of the inventors.

**RESPONSE:**  Pfizer admits that the '479 Patent is titled "Biodegradable Lipids for the Delivery of Active Agents" and that an issuance date of February 28, 2023 appears on the face of the '479 Patent. Pfizer admits that on the face of the '479 Patent, Alnylam is listed as an assignee. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31 and, on that basis, denies the allegations.

32.     The '479 Patent claims a lipid compound that can be used in a lipid particle for the delivery of active an active agents.

**RESPONSE:**  Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 and therefore denies the allegations.

33.     Independent claim 10 of the '479 Patent recites:

A lipid compound, comprising a head group, two identical hydrophobic tails, and a central moiety to which the head group and the two hydrophobic tails are directly bonded, wherein:

the central moiety is a nitrogen atom;

each hydrophobic tail has the formula $-R^{12}-M^1-R^{13}$,

wherein: $R^{12}$ is a $C_4$-$C_{14}$ alkyl group,

$M^1$ is $-OC(O)-$, and

$R^{13}$ is a $C_{10}$-$C_{20}$ alkyl group that is branched at the α-position relative to $M^1$;

the chain length of formula $-R^{12}-M^1-R^{13}$ is from 17 to 24 atoms; and

the total carbon atom content of each hydrophobic tail is 21 to 26 carbon atoms.

**RESPONSE:**  Pfizer admits that claim 10 of the '479 Patent recites the above claim language.

34.     Dependent claim 11 of the '479 Patent, which depends from claim 10, is representative and recites:

The lipid compound of claim 10, wherein $R^{12}$ is n-hexyl.

**RESPONSE:**  Pfizer admits that claim 11 of the '479 Patent recites the above claim language. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and, on that basis, denies the allegations.

35.     The '479 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

**RESPONSE:**  Pfizer admits that on the face of the '479 Patent, Alnylam is listed as an assignee. Pfizer denies that the '479 Patent is valid and enforceable. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 35 and, on that basis, denies the allegations.

36.     On April 25, 2023, The United States Patent & Trademark Office issued the '480 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents."  The '480 Patent issued to Alnylam as assignee of the inventors.

**RESPONSE:**  Pfizer admits that the '480 Patent is titled "Biodegradable Lipids for the Delivery of Active Agents" and that an issuance date of April 25, 2023 appears on the face of the '480 Patent. Pfizer admits that Alnylam is listed as an assignee on the face of the '480 Patent. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 and, on that basis, denies the allegations.

37.     The '480  Patent claims a lipid particle for delivery of an active agent, including mRNA, containing a protonatable lipid compound, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid. Each protonatable lipid compound contains a head group, hydrophobic tails, and a central moiety to which the head group and the two hydrophobic tails are directly bonded.

**RESPONSE:**  Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37 and therefore denies the allegations.

38.    Independent claim 1 of the '480 Patent is representative of the lipid particle composition claims and recites:

A lipid particle comprising:

(i) a nucleic acid,
(ii) 35-65 mol % of a protonatable lipid compound,
(iii) 3-12 mol % distearoylphosphatidylcholine (DSPC),
(iv) 15-45 mol % cholesterol, and
(v) 0.5-10 mol % of a PEG-modified lipid,

wherein the mol% is based on 100% total moles of lipids in the lipid particle,

wherein the protonatable lipid compound comprises a head group, hydrophobic tails, and a central moiety to which the head group and the hydrophobic tails are directly bonded, wherein:

the central moiety is a nitrogen atom;

the hydrophobic tails consist of two hydrophobic tails;

each of the two hydrophobic tails has the formula $-R^{12}-M^1-R^{13}$, wherein

$R^{12}$ is a C4-C14 alkyl group, $M^1$ is a -OC(O)- group, and $R^{13}$ is a C10-C20 branched alkyl group;

the chain length of formula $-R^{12}-M^1-R^{13}$ is at most 21 atoms; and

the total carbon atom content of each hydrophobic tail is 21 to 26 carbon atoms.

(Exhibit 2 at Claim 1.)

**RESPONSE:**  Pfizer admits that claim 1 of the '480 Patent recites the above claim language. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 38 and, on that basis, denies the allegations.

39.    The '480 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

**RESPONSE:**  Pfizer admits that on the face of the '480 Patent, Alnylam is listed as an assignee. Pfizer denies that the '480 Patent is valid and enforceable. Pfizer lacks the knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 39

and on that basis denies the allegations.

### D.     DEFENDANTS' COVID-19 VACCINE

40.     On March 17, 2020, Defendants Pfizer Inc. and BioNTech SE announced a plan to jointly develop a COVID-19 vaccine. (Exhibit 12 at 2.) A redacted copy of the Collaboration Agreement by and between Pfizer Inc. and BioNTech, dated March 17, 2020, is publicly available. (Exhibit 13.) Under the Collaboration Agreement, Defendant Pfizer Inc. has the sole right in the United States to "market, promote, distribute, offer for sale, sell, have sold, import, have imported, export, have exported or otherwise commercialize" Defendants' COVID-19 Vaccine. (Exhibit 12, §1.25 (defining "Commercialize"); §1.6 (defining "BioNTech Commercialization Territory"); §1.88 (defining "Pfizer Commercialization Territory").) Under the Collaboration Agreement, Defendant Pfizer Inc. has the right in the United States to "make, produce, manufacture, process, fill, finish, package, label, perform quality assurance testing, release, ship or store, and for the purposes of further manufacturing, distribute, import or export" Defendants' COVID-19 Vaccine or "any component thereof." (*Id.*, §1.75 (defining "Manufacture"); §3.2 ("Licenses for Commercial Manufacturing").)

**RESPONSE:** Pfizer admits that Exhibit 13 states, "BioNTech SE (Nasdaq: BNTX,

'BioNTech' or 'the Company'), and Pfizer Inc. (NYSE: PFE) today disclosed additional details of

their collaboration to advance candidates from BioNTech's mRNA vaccine program, previously

announced on March 17, 2020." (Exhibit 13 at 1.) Pfizer admits that Exhibit 13 is a redacted copy

of the Collaboration Agreement between Pfizer and BioNTech, dated March 17, 2020. Pfizer

admits that the Collaboration Agreement defines "Commercialize" as "to market, promote,

distribute, offer for sale, sell, have sold, import, have imported, export, have exported or otherwise

commercialize a compound or product." (Exhibit 12, § 1.25 (defining "Commercialize").) Pfizer

further admits that the Collaboration Agreement defines "Manufacture" as "to make, produce,

manufacture, process, fill, finish, package, label, perform quality assurance testing, release, ship

or store, and for the purposes of further Manufacturing, distribute, import or export, a compound

or product or any component thereof." (*Id.*, § 1.75 (defining "Manufacture").) Pfizer denies the

remaining allegations of Paragraph 40.

16

41.     On April 9, 2020, Defendants provided additional details about this collaboration, including that "BioNTech will contribute multiple mRNA vaccine candidates as part of its BNT162 COVID-19 vaccine program" and that "Pfizer will contribute its leading global vaccine clinical research and development, regulatory, manufacturing and distribution infrastructure and capabilities." (Exhibit 13 at 1.)

**RESPONSE:**  Pfizer admits that Exhibit 13 is dated April 9, 2020 and states, "BioNTech will contribute multiple mRNA vaccine candidates as part of its BNT162 COVID-19 vaccine program" and that "Pfizer will contribute its leading global vaccine clinical research and development, regulatory, manufacturing and distribution infrastructure and capabilities." (Exhibit 13 at 1.) Pfizer denies the remaining allegations of Paragraph 41.

42.     On April 22, 2020, Defendants announced their first clinical trial in Germany of four mRNA vaccine candidates.  (Exhibit 14 at 1.)  Each vaccine candidate used a lipid particle to deliver the mRNA.  (*Id.*)

**RESPONSE:**  The allegations of Paragraph 42 purport to rely on Exhibit 14 at 1, which speaks for itself. Pfizer denies the remaining allegations of Paragraph 42.

43.     On May 5, 2020, Defendants announced that the first doses of Defendants' four vaccine candidates were administered to individuals in the United States as part of Defendants' Phase 1/2 clinical trial.  (Exhibit 15 at 1.)  Defendants stated that "Pfizer plans to activate its extensive manufacturing network and invest at risk in an effort to produce an approved COVID-19 vaccine as quickly as possible for those most in need around the world Pfizer-owned sites in three U.S. states (Massachusetts, Michigan, and Missouri) and Puurs, Belgium, have been identified as manufacturing centers for COVID-19 vaccine production, with more sites to be selected." (*Id.* at 2.)

**RESPONSE:**  Pfizer admits that Exhibit 15 is dated May 5, 2020 and states, "Pfizer Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX) announced today that the first participants have been dosed in the U.S. in the Phase 1/2 clinical trial for the BNT162 vaccine program to prevent COVID-19." (Exhibit 15 at 1.) Pfizer further admits that Exhibit 15 states, "Pfizer plans to activate its extensive manufacturing network and invest at risk in an effort to produce an approved COVID-19 vaccine as quickly as possible for those most in need around the world … Pfizer-owned sites in three U.S. states (Massachusetts, Michigan and Missouri) and Puurs, Belgium have been

identified as manufacturing centers for COVID-19 vaccine production, with more sites to be selected." (*Id.* at 3.) Pfizer denies the remaining allegations of Paragraph 43.

44.     On July 13, 2020, Defendants announced that the FDA granted Fast Track Designations to two of Defendants' candidate vaccines. (Exhibit 16 at 1.) Peter Honig, Pfizer's Senior Vice President, Global Regulatory Affairs, commented "[w]e look forward to continue working closely with the FDA throughout the clinical development of this program, Project Lightspeed, to evaluate the safety and efficacy of these vaccine candidates." (*Id.* at 1-2.)

**RESPONSE:**  Pfizer admits that Exhibit 16 is dated July 13, 2020, which states, "Pfizer

Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX, 'BioNTech') today announced that two of

the companies' four investigational vaccine candidates from their BNT162 mRNA-based vaccine

program (BNT162b1 and BNT162b2) being developed to help protect against SARS-CoV-2 (the

virus that causes COVID-19), received Fast Track designation from the U.S. Food and Drug

Administration (FDA)." (Exhibit 16 at 1.) Pfizer further admits that Exhibit 16 reflects that "Peter

Honig, Senior Vice President, Global Regulatory Affairs, Pfizer" stated, "[w]e look forward to

continue working closely with the FDA throughout the clinical development of this program,

Project Lightspeed, to evaluate the safety and efficacy of these vaccine candidates." (*Id.* at 1-2.)

Pfizer denies the remaining allegations of Paragraph 44.

45.     On July 27, 2020, Defendants announced that they had advanced the "nucleoside-modified messenger RNA (modRNA) candidate BNT162b2,[4] which encodes an optimized SARS-CoV-2 full-length spike glycoprotein, at a 30µg dose level in a 2 dose regimen into Phase 2/3 Study." (Exhibit 17 at 1.)  Upon information and belief, the vaccine that Defendants selected contains Defendants' Infringing Lipid Particles, including ALC-0315.

**RESPONSE:**  Pfizer admits that Exhibit 17 is dated July 27, 2020 and states "Companies

advance nucleoside-modified messenger RNA (modRNA) candidate BNT162b2, which encodes

an optimized SARS-CoV-2 full-length spike glycoprotein, at a 30µg dose level in a 2 dose regimen

into Phase 2/3 Study." (Exhibit 17 at 1.) Pfizer denies that COMIRNATY®, including any of its

---

[4] Upon information and belief, BNT162b2 was the code name for Defendants' mRNA COVID-19 Vaccine during clinical trials. (Exhibit 6 at 11.)

components, infringes the Patents-in-Suit. Pfizer further denies the remaining allegations of Paragraph 45.

46.    On November 18, 2020, Defendants announced that their Phase 3 clinical trial met all primary efficacy endpoints.  (Exhibit 18 at 1.)  Defendants stated that "[f]our of Pfizer's facilities are part of the manufacturing and supply chain; St. Louis, MO; Andover, MA; and Kalamazoo, MI in the U.S.; and Puurs in Belgium." (*Id.* at 2.)

**RESPONSE:**  Pfizer admits that Exhibit 18 is dated November 18, 2020 and states, "Pfizer Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX) today announced that, after conducting the final efficacy analysis in their ongoing Phase 3 study, their mRNA-based COVID-19 vaccine candidate, BNT162b2, met all of the study's primary efficacy endpoints." (Exhibit 18 at 1.) Pfizer further admits that Exhibit 18 states, "[f]our of Pfizer's facilities are part of the manufacturing and supply chain; St. Louis, MO; Andover, MA; and Kalamazoo, MI in the U.S.; and Puurs in Belgium." (*Id.* at 3.) Pfizer denies the remaining allegations of Paragraph 46.

47.    On December 11, 2020, the FDA authorized Defendants' BNT162b2 candidate with the infringing lipid particles made from Defendants' Infringing Lipid Particles, including ALC-0315, (Defendants' COVID-19 Vaccine) for emergency use against COVID-19 in individuals 16 years of age or older. (Exhibit 20 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing lipid particles.  Albert Bourla, Chairman and Chief Executive Officer of Pfizer said, "[a]s a U.S. company, today's news brings great pride and tremendous joy that Pfizer has risen to the challenge to develop a vaccine that has the potential to help bring an end to this devastating pandemic.  We have worked tirelessly to make the impossible possible, steadfast in our belief that science will win." (Exhibit 20 at 1-2.)

**RESPONSE:**  Pfizer admits that Exhibit 20 is dated December 11, 2020 and states, "Pfizer Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX) announced today that the U.S. Food and Drug Administration (FDA) has authorized the emergency use of the mRNA vaccine, BNT162b2, against COVID-19 in individuals 16 years of age or older." (Exhibit 20 at 1.) Pfizer further admits that Exhibit 19 reflects that "Albert Bourla, Chairman and Chief Executive Officer, Pfizer" stated, "[a]s a U.S. company, today's news brings great pride and tremendous joy that Pfizer has risen to the challenge to develop a vaccine that has the potential to help bring an end to this devastating

pandemic. We have worked tirelessly to make the impossible possible, steadfast in our belief that science will win." (*Id.* at 1-2.) Pfizer denies that COMIRNATY®, including any of its components, such as ALC-0315, infringes any of the Patents-in-suit. Pfizer further denies the remaining allegations of Paragraph 47.

48.    On May 11, 2021, the FDA authorized Defendants' COVID-19 Vaccine for emergency use against COVID-19 in children ages twelve to fifteen. (Exhibit 19 n. 5.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing lipid particles made with Defendants' Infringing Lipid Particles, including ALC-0315.

**RESPONSE:**  Pfizer admits that Exhibit 19 n. 5 is dated May 11, 2021 and states, "Pfizer Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX) announced today that the U.S. Food and Drug Administration (FDA) has expanded the Emergency Use Authorization (EUA) for their COVID-19 vaccine to include individuals 12 to 15 years of age." (Exhibit 19 n. 5.) Pfizer denies that COMIRNATY®, including any of its LNPs or lipids, such as ALC-0315, infringes any of the Patents-in-Suit. Pfizer further denies the remaining allegations of Paragraph 48.

49.    On August 23, 2021, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® for use in individuals sixteen and over. (Exhibit 19 n. 9.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® contains the infringing lipid particles made with Defendants' Infringing Lipid Particles, including ALC-0315.

**RESPONSE:**  Pfizer admits that Exhibit 19 n. 9 is dated August 23, 2021 and states, "Pfizer Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX) today announced that the U.S. Food and Drug Administration (FDA) approved the Biologics License Application (BLA) for COMIRNATY® to prevent COVID-19 in individuals 16 years of age and older." (Exhibit 19 n. 9.) Pfizer admits that the mRNA-based COVID-19 vaccine developed by Pfizer and BioNTech is sold under the tradename COMIRNATY®. Pfizer denies that COMIRNATY®, including any of its LNPs or lipids, such as ALC-0315, infringes any of the Patents-in-Suit. Pfizer further denies the remaining allegations of Paragraph 49.

50.     On October 29, 2021, the FDA authorized Defendants' COVID-19 Vaccine for emergency use against COVID-19 in children ages five to eleven. (Exhibit 19 n.12) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing lipid particles made with Defendants' Infringing Lipid Particles, including ALC-0315.

**RESPONSE:**  Pfizer admits that Exhibit 19 n. 12 is dated October 29, 2021 and states,

"Pfizer Inc. (NYSE: PFE) and BioNTech SE (Nasdaq: BNTX) today announced that the U.S. Food

and Drug Administration (FDA) has authorized for emergency use the Pfizer-BioNTech COVID-

19 Vaccine for children 5 through 11 years of age (also referred to as 5 to <12 years)." (Exhibit 19

n. 12.) Pfizer denies that COMIRNATY®, including any of its LNPs or lipids, such as ALC-0315,

infringes any of the Patents-in-Suit. Pfizer further denies the remaining allegations of Paragraph

50.

51.     Upon information and belief, on December 16, 2021, the FDA approved a new formulation of Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (gray cap) in individuals sixteen and over. (Exhibit 19 n. 15, Exhibit 8 at 1.) Upon information and belief, Defendants continue to market their prior COVID-19 Vaccine formulation under the tradename COMIRNATY® (purple cap) for use in individuals sixteen and over. (Exhibit 7 at 1.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® (gray cap (monovalent) and purple cap)[5] contains the infringing lipid particles made with Defendants' Infringing Lipid Particles, including ALC-0315.

**RESPONSE:**  Pfizer admits that Exhibit 19 n. 15 appears to be a letter from the FDA dated

December 16, 2021, which states, "[w]e have approved your request submitted and received on

November 18, 2021, to supplement your Biologics License Application (BLA) under section

351(a) of the Public Health Service Act for COVID-19 Vaccine, mRNA (COMIRNATY®), to

include a new 30 microgram dose formulation (Tris/Sucrose) of COMIRNATY® manufactured at

the Pfizer Manufacturing Belgium NV, Puurs, Belgium (Pfizer, Puurs) facility." (Exhibit 19 n. 15.)

---

[5] The prescribing information for both versions state that Defendant Pfizer Inc. manufactures Defendants' COVID-19 Vaccine. (Compare Exhibit 7 at 36 with Exhibit 8 at 24)

Pfizer further admits that Exhibits 7 and 8 purport to be the prescribing information for COMIRNATY®.

Pfizer denies that COMIRNATY®, including any of its LNPs or lipids, such as ALC-0315, infringes any of the Patents-in-Suit. Pfizer further denies the remaining allegations of Paragraph 51.

52.     Upon information and belief, on October 29, 2021, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (orange cap) in individuals 5 years through 11 years of age. (Exhibit 19 n.12.) Upon information and belief, on June 17, 2022, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (maroon cap) in individuals 6 months through 4 years of age. (Exhibit 19 n.19.) Upon information and belief, on August 31, 2022, the FDA approved Defendants' COVID-19 Bivalent Booster Dose under the tradename COMIRNATY® (gray cap (bivalent)) in individuals 12 years of age or older. (Exhibit 19 n.22.) Upon information and belief, on October 12, 2022, the FDA approved Defendants' COVID-19 Bivalent Booster Dose under the tradename COMIRNATY® (orange cap (bivalent)) in individuals 5 years through 11 years of age. (Exhibit 19 n.25.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® (maroon cap, orange cap (monovalent and bivalent) and gray cap (bivalent)) contains the infringing lipid particles made with Defendants' Infringing Lipid Particles, including ALC-0315.

**RESPONSE:** Pfizer admits that Exhibit 19 n. 15 appears to be a letter from the FDA dated December 16, 2021, which states, "[w]e have approved your request submitted and received on November 18, 2021, to supplement your Biologics License Application (BLA) under section 351(a) of the Public Health Service Act for COVID-19 Vaccine, mRNA (COMIRNATY®), to include a new 30 microgram dose formulation (Tris/Sucrose) of COMIRNATY® manufactured at the Pfizer Manufacturing Belgium NV, Puurs, Belgium (Pfizer, Puurs) facility." (Exhibit 19 n. 15.)

Pfizer further admits that Exhibits 7 and 8 purport to be the prescribing information for COMIRNATY®.

Pfizer denies that COMIRNATY®, including any of its components, infringes the Patents-in-Suit. Pfizer further denies the remaining allegations of Paragraph 52.

53.     Upon information and belief, on April 18, 2023, the FDA amended the EUA, rescinding its authorization for use of monovalent COMIRNATY® in the United States (Exhibit

19 at 3, 15, and n.28) The amendment authorized the use of the Bivalent COMIRNATY® vaccines (gray cap, orange cap, maroon cap) for all doses administered to all individuals 6 months of age or older (Exhibit 6 at 1).  The Bivalent COMIRNATY® vaccine contains the infringing lipid particles made with Defendants' Infringing Lipid Particles, including ALC-0315. (Exhibit 6 at 52-53, Exhibit 7 at 19, Exhibit 8 at 16-17).  A new revision of the label for the purple cap doses was also released in April 2023.  (Exhibit 7.)

**RESPONSE:**  Pfizer admits that Exhibit 19 n. 15 purports to be a letter from the FDA

dated December 16, 2021, which states, "[w]e have approved your request submitted and received

on November 18, 2021, to supplement your Biologics License Application (BLA) under section

351(a) of the Public Health Service Act for COVID-19 Vaccine, mRNA (COMIRNATY®), to

include a new 30 microgram dose formulation (Tris/Sucrose) of COMIRNATY® manufactured at

the Pfizer Manufacturing Belgium NV, Puurs, Belgium (Pfizer, Puurs) facility." (Exhibit 19 n. 15.)

Pfizer further admits that Exhibits 7 and 8 purport to be the prescribing information for

COMIRNATY®.

Pfizer denies that COMIRNATY®, including any of its components, infringes the Patents-

in-Suit. Pfizer further denies the remaining allegations of Paragraph 53.

54.    On February 8, 2022, Defendant Pfizer Inc. stated that it expected 2022 worldwide revenue of $32,000,000,000 for Defendants' COVID-19 Vaccine.  (Exhibit 9 at 29.)  Defendant Pfizer Inc.'s reported revenues suggest that U.S. sales in 2021 accounted for approximately 21% of the sales of Defendants' COVID-19 Vaccine in 2021.  (*Id.* at 35.)  One February 23, 2023, Defendant Pfizer Inc. reported a global revenue of $37,806,000,000 for Defendant's COVID-19 Vaccine. (Exhibit 10 at 38). Of that $8,775,000,000 is from U.S. sales. (*Id.*). As of January 31, 2023, Defendants Pfizer Inc. forecast 2023 COMIRNATY® revenues of approximately $13.5 billion.

**RESPONSE:**  Pfizer admits that Exhibit 9 states that "[a]s of February 8, 2022, [Pfizer]

forecasted approximately $32 billion in revenues for Comirnaty in 2022, with gross profit to be

split evenly with BioNTech, which includes doses expected to be delivered in fiscal 2022 under

contracts signed as of late-January 2022." (Exhibit 9 at 29.)

The allegations of paragraph 54 related to worldwide and U.S. COMIRNATY® sales revenue purport to rely on Exhibit 10, page 38, which speaks for itself. Pfizer denies the remaining allegations of Paragraph 54**.**

55.    Upon information and belief, Pfizer has manufactured doses of Defendants' COVID-19 Vaccine in the United States that it has shipped to other countries, including Mexico and Canada. (Exhibit 21). Upon information and belief, Pfizer exported those U.S.-made doses pursuant to agreements with the governments of Mexico and Canada. (Exhibits 22, 23.) An official from the Canadian government confirmed shipments of Defendants' COVID-19 vaccine from Kalamazoo, Michigan to Canada. (Exhibit 24.) A White House COVID-19 advisor confirmed that Pfizer shipped U.S.-made doses of Defendants' COVID-19 Vaccine to Mexico and Canada. (Exhibit 24.) Upon information and belief, Pfizer has an agreement with the Canadian government to provide Defendants' COVID-19 Vaccine through at least 2024, including "[u]p to 65 million for 2022, up to 60 million in 2023 and up to 60 million in 2024." (Exhibit 23.)

**RESPONSE:**  Pfizer admits that Exhibit 21 states that "Pfizer Inc. has . . . begun shipping from the U.S. to countries including Mexico, Canada, and Uruguary." (Exhibit 21 at 2.) Pfizer admits that Exhibit 22 states that "the government [of Mexico] has signed a contract" for "the Pfizer-BioNTech vaccine" (Exhibit 22 at 3.) Pfizer admits that Exhibit 23 states that "Canada will soon be getting doses of Pfizer-BioNTech COVID-19 vaccines . . . produced in Kalamazoo, Mich, to Canada" (Exhibit 23 at 2.) which "[o]fficials in both [U.S. and Canada] and the company itself have confirmed." (Exhibit 24 at 2.) Pfizer admits that Exhibit further states that "Andy Slavitt, a White House adviser on COVID-19, tweeted a report from Reuters and said U.S.-made vaccines will be heading to Canada and Mexico. (Exhibit 24 at 3.) Exhibit 23 does not state "[u]p to 65 million for 2022, up to 60 million in 2023 and up to 60 million in 2024" as alleged by Alnylam. Pfizer denies the remaining allegations of Paragraph 55.

56.    On April 23, 2023, the FDA updated the "Conditions Related to Export" for Pfizer's COVID-19 Vaccine, regarding what doses Defendants are "permitted" to "export" from the United States. (Exhibit 19 at 28).

**RESPONSE:**  The allegations of Paragraph 56 purport to rely on Exhibit 19, page 28, which speaks for itself.  Pfizer admits Exhibit 19 is dated April 23, 2023 and states "Conditions

Related to Export[,]" "permitted[,]" and "export[.]" Pfizer denies the remaining allegations of

Paragraph 56.

57.     Upon information and belief, Pfizer plans to sell doses of its COVID-19 Vaccine on the private market in the United States. Specifically, on October 20, 2022, during an investor call, Pfizer revealed that it planned to charge a private-market price of between $110 - $130 per dose for its COVID-19 Vaccine. (Exhibit 26 at 8.)

**RESPONSE:**  Pfizer admits that the transcript in Exhibit 26 is dated October 20, 2022.

(Exhibit 26 at 1). Pfizer admits that Exhibit 26 states that "[a]s [Pfizer] prepare for the transition

to a traditional commercial market . . . the commercial price point for the vaccine will reflect its

cost effectiveness. . . . We believe a potential U.S. list price between $110 and $130 per single

dose vial for adults reflects the value of the vaccine and as well the thresholds for what would be

considered a highly cost-effective vaccine." (Exhibit 26 at 7-8). Pfizer denies the remaining

allegations of Paragraph 57.

### E.     Alnylam's Patented Lipid Particle Technology Is Essential to Defendants' Covid-19 Vaccine

58.     The patented Alnylam Lipid Particle Technology is essential to the efficacy and safety of Defendants' COVID-19 Vaccine. mRNA is very delicate and subject to rapid degradation by various enzymes upon administration. (Exhibit 11 at 2.) The large, negatively- charged mRNA strands also struggle to pass through the protective lipid membranes of cells. (*Id.*) Thus, to be effective, the mRNA strands require a delivery mechanism that can ensure that the mRNA strands are not degraded before delivery to the cell and can penetrate the cell. In addition, the lipid particle needs to be biodegradable, *i.e.*, such that the lipid particles are metabolized and eliminated after successful mRNA delivery to the cells, so as to enhance safety.

**RESPONSE:**  Pfizer denies that any of the technology claimed by the Patents-in-Suit is

included in COMIRNATY®. Pfizer further denies that any technology claimed by the Patents-in-

Suit is essential to the efficacy and safety of COMIRNATY®. At least because of the scope,

breadth, and vagueness of this allegation, Pfizer lacks the knowledge or information sufficient to

form a belief as to the truth of the remaining allegations of Paragraph 58 and therefore denies the

remaining allegations of Paragraph 58.

59.     Regarding these lipid particles, Defendant Pfizer Inc.'s website states "[t]his tiny fat glob, known as a functional lipid, is actually one of four lipids that make up the lipid nanoparticles that go into the vaccine. *Without these lipid nanoparticles, in fact, there could be no Pfizer-BioNTech mRNA vaccine.* That's because mRNA, which is the genetic material that teaches our cells to make the protein that will help our immune systems produce antibodies that helps to protect us from COVID-19, is incredibly delicate." (Exhibit 25 (emphasis added) at 2.)

**RESPONSE:**  Pfizer admits that Exhibit 25 states, "[t]his tiny fat glob, known as a functional lipid, is actually one of four lipids that make up the lipid nanoparticles that go into the vaccine. Without these lipid nanoparticles, in fact, there could be no Pfizer-BioNTech mRNA vaccine. That's because mRNA, which is the genetic material that teaches our cells to make the protein that will help our immune systems produce antibodies that helps to protect us from COVID-19, is incredibly delicate." (Exhibit 25 at 2.) Pfizer denies that any of the technology claimed by the Patents-in-Suit is included in COMIRNATY®. Pfizer denies the remaining allegations of Paragraph 59.

## **DEFENDANTS' INFRINGING ACTIVITIES**

60.     Attached as Exhibit 27 and incorporated herein is a claim chart describing Defendants' infringement of claims 27 and 28 of the '229 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '229 Patent or any other patents.  Upon information and belief, Defendants' Infringing Lipid Particles are in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

**RESPONSE:**  Pfizer admits that Exhibit 27 of the Complaint purports to be Plaintiff's claim chart for claims 27 and 28 of the '229 Patent.  Pfizer denies that COMIRNATY®, including any of its LNPs or lipids, such as ALC-0315, meet every limitation of claims 27 and 28 of the '229 Patent. Pfizer denies the remaining allegations of Paragraph 60.

61.     The Prescribing Information for COMIRNATY® states that each dose contains the following lipid mixture: "0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-phosphocholine, and 0.19 mg cholesterol". (Exhibit 6 at 53, Exhibit 7 at 19.) Upon information and belief, the lipids are with the molar percentages of: 35-65 mol % of a protonatable lipid compound, 3-12 mol % distearoylphosphatidylcholine (DSPC), 15-45 mol % cholesterol, and 0.5-10 mol % of a PEG-modified lipid.

**RESPONSE:** Pfizer admits that Exhibit 6 contains the prescribing information for COMIRNATY®, which states, "[e]ach 0.3 mL dose of the COMIRNATY supplied in multiple dose vials with gray caps and labels with gray borders also includes the following ingredients: lipids (0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-phosphocholine, and 0.19 mg cholesterol), 0.06 mg tromethamine, 0.4 mg tromethamine hydrochloride, and 31 mg sucrose." (Exhibit 6 at 53.) Pfizer denies the remaining allegations of Paragraph 61.

62.     The Prescribing Information for COMIRNATY® states that each dose contains "30 mcg of a nucleoside-modified messenger RNA (mRNA)[6] encoding the viral spike (S) glycoprotein of SARS-CoV-2." (Exhibit 6 52-53, Exhibit 7 at 19, Exhibit 8 at 16). Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine.

**RESPONSE:** Pfizer admits that Exhibits 6, 7, and 8 purport to be the prescribing information for COMIRNATY® and state "30 mcg of a nucleoside-modified messenger RNA (mRNA) encoding the viral spike (S) glycoprotein of SARS-CoV-2." (Exhibit 6 51-53, Exhibit 7 at 19, Exhibit 8 at 16). Pfizer admits that the prescribing information for COMIRNATY® was prepared by Pfizer and BioNTech and reviewed and approved by the FDA.  Pfizer denies the remaining allegations in Paragraph 62.

63.     Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.  Upon information and belief, ALC-0315 has the chemical structure depicted just below:

---

[6] mRNA is a nucleic acid.

(Exhibit 28 at 8.)

**RESPONSE:**   Pfizer admits that 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315 and was not invented by Alnylam. Pfizer further admit that Exhibit 28 at 8 depicted in Paragraph 63 purports to depict the structure above. (Exhibit 28 at 8.)

64.     Upon information and belief, a pharmaceutical composition containing ALC-0315 is in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

**RESPONSE:**   Pfizer admits that COMIRNATY® contains ALC-0315, which was not invented by Alnylam. Pfizer denies the remaining allegations of Paragraph 64.

65.     Defendants have known of the '229 Patent since at least as early as February 28, 2023, when the '229 Patent issued. Alnylam notified Defendants of the published '029 Application on June 23, 2022. Alnylam informed Defendants of the Notice of Allowability and payment of issue fee for the '029 Application on January 23, 2023. Alnylam provided Defendants with the claims as allowed on the same date. The claims are publicly available and have been known to Defendants since at least December 1, 2022. Alnylam notified Defendants of the Issue Notification for the '029 Application, detailing that the application would issue February 28, 2023 as U.S. Patent No. 11,590,229, on February 9, 2023.

**RESPONSE:**   Pfizer admits that they have known of the  '229 Patent since it issued on February 28, 2023. Pfizer further admits that Alnylam notified Pfizer and BioNTech of the published '029 Application on June 23, 2022.  Pfizer further admits that Alnylam stated in a January 23, 2023 email that "Alnylam's pending U.S. Patent Application No. 17/651,029 has

received a Notice of Allowability from the USPTO, and Alnylam has paid the issue fee" and that Alnylam attached to the email what it purported to be "the claims as allowed."  Pfizer further admits that Alnylam stated in a February 9, 2023 email  "[a]ttached is the Issue Notification for the '029 Application, which will issue as U.S. Patent No. 11,590,229 on February 28, 2023". Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65, and therefore denies the remaining allegations.

66.     On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine Defendants' Infringing Lipid Particles, which meets (or the delivery of which meets) every limitation of at least claims 27 and 28 of the '229 Patent.

**RESPONSE:**  Pfizer denies that COMIRNATY®, including any of its components, such as any of its lipids or LNPs, meets every limitation of claims 27 and 28 of the '229 Patent. Pfizer further denies any remaining allegations of Paragraph 66.

67.     Defendants have known of the '657 Patent since at least as early as March 28, 2023, when the '657 Patent issued. Alnylam notified Defendants of the published '023  Application on June 23, 2022.

**RESPONSE:**  Pfizer admits that they have known of the '657 Patent since it issued on March 28, 2023. Pfizer further admits that Alnylam notified Pfizer and BioNTech of the published '023 Application on June 23, 2022. Pfizer lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67, and therefore denies the allegations.

68.     On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine Defendants' Infringing Lipid Particles, which meets every limitation of at least claims 15-19, 22, 23, 26, 28, and 29 of the '657 Patent.

**RESPONSE:**  Pfizer denies that COMIRNATY®, including any of its components, such as any of its lipids or LNPs, meets every limitation of claims 15-19, 22, 23, 26, 28, and 29 of the '657 Patent. Pfizer further denies any remaining allegations of Paragraph 68.

69.     The Prescribing Information for COMIRNATY® states that each dose contains the following lipid mixture: "0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-phosphocholine, and 0.19 mg cholesterol". (Exhibit 6 at 53, Exhibit 7 at 19.) Upon information and belief, the lipids are within the molar percentages of: 35-65 mol % of a protonatable lipid compound, 3-12 mol % distearoylphosphatidylcholine (DSPC), 15-45 mol % cholesterol, and 0.5-10 mol % of a PEG-modified lipid.

**RESPONSE:** Pfizer admits that Exhibit 6 purports to be the prescribing information for

COMIRNATY®, which states, "[e]ach 0.3 mL dose of the Pfizer-BioNTech COVID-19

Vaccine, Bivalent supplied in multiple dose and single dose vials with gray caps and labels with

gray borders also includes the following ingredients: lipids (0.43 mg ((4-

hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg 2 (polyethylene

glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-phosphocholine,

and 0.19 mg cholesterol), 0.06 mg tromethamine, 0.4 mg tromethamine hydrochloride, and 31

mg sucrose." (Exhibit 6 at 53.)  Pfizer admits that Exhibit 7 purports to be the prescribing

information for COMIRNATY®, which states, "[e]ach 0.3 mL dose of the COMIRNATY

supplied in multiple dose vials with purple caps and labels with purple borders also includes the

following ingredients: lipids (0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-

hexyldecanoate), 0.05 mg 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-

distearoyl-sn-glycero-3-phosphocholine, and 0.2 mg cholesterol)."  Pfizer denies the remaining

allegations of Paragraph 69.

70.     The Prescribing Information for COMIRNATY® states that each dose contains "30 mcg of a nucleoside-modified messenger RNA (mRNA)[7] encoding the viral spike (S) glycoprotein of SARS-CoV-2." (Exhibit 6 at 52-53, Exhibit 7 at 19, Exhibit 8 at 16 ). Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine.

---

[7] mRNA is a nucleic acid.

30

**RESPONSE:**  Pfizer admits that Exhibit 6 purports to be the prescribing information for

COMIRNATY®, which states, "[e]ach 0.3 mL dose of the Pfizer-BioNTech COVID-19 Vaccine,

Bivalent supplied in multiple dose and single dose vials with gray caps and labels with gray borders

is formulated to contain 15 mcg of a nucleoside-modified messenger RNA (modRNA) encoding

the viral spike (S) glycoprotein of SARS-CoV-2 Wuhan-Hu-1 strain (Original) and 15mcg of

modRNA encoding the S glycoprotein of SARS-CoV-2 Omicron variant lineages BA.4 and BA.5

(Omicron BA.4/BA.5). The S-proteins of the SARS-CoV-2 Omicron variant lineages BA.4 and

BA.5 are identical. Each dose contains 30 mcg modRNA." (Exhibit 6 at 53.) Pfizer admits that the

prescribing information for COMIRNATY® was prepared by Pfizer and BioNTech and reviewed

and approved by the FDA. Pfizer denies the remaining allegations of Paragraph 70.

71.    Attached as Exhibit 29 and incorporated herein is a claim chart describing
Defendants' infringement of claims 15-19, 22, 23, 26, 28, and 29 of the '657 Patent. The claim
chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of
Defendants infringe the identified claim or any other claims of the '657 Patent or any other patents.

**RESPONSE:**  Pfizer admits that Exhibit 29 of the Complaint purports to be Plaintiff's

claim chart for claims 15-19, 22, 23, 26, 28, and 29 of the '657 Patent. Pfizer denies infringement

of any claim of the '657 Patent and any remaining allegations of Paragraph 71.

72.    Upon information and belief, Defendants' Infringing Lipid Particles are in every
dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will
continue to do so.

**RESPONSE:**  Pfizer admits that COMIRNATY® contains lipids and LNPs, which were

not invented by Alnylam. Pfizer further denies the remaining allegations of Paragraph 72.

73.    On information and belief, Defendants and/or their end users employ in their
COVID-19 Vaccine ALC-0315, the delivery of which meets every limitation of at least claims 11
and 12 of the '479 Patent.

**RESPONSE:**  Pfizer admits that COMIRNATY® contains ALC-0315, which was not

invented by Alnylam. Pfizer denies that COMIRNATY®, including any of its components, such

as ALC-0315, meets every limitation of claims 11 and 12 of the '479 Patent. Pfizer further denies

the remaining allegations of Paragraph 73.

74.    The Prescribing Information for COMIRNATY® states that each dose contains ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate). (Exhibit 6 at 52-53.) Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine. Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.

**RESPONSE:**    Pfizer admits that Exhibit 6 is the prescribing information for

COMIRNATY®, which states, "[e]ach 0.3 mL dose of the COMIRNATY supplied in multiple

dose vials with gray caps and labels with gray borders also includes the following ingredients:

lipids (0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg

2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-

phosphocholine, and 0.19 mg cholesterol), 0.06 mg tromethamine, 0.4 mg tromethamine

hydrochloride, and 31 mg sucrose." (Exhibit 4 at 15.). Pfizer further admits that 4-

hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315 and

was not invented by Alnylam. Pfizer denies the remaining allegations of Paragraph 74.

75.    Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315. Upon information and belief, ALC-0315 has the chemical structure depicted just below:



(Exhibit 28 at 8.)

32

**RESPONSE:** Pfizer admits that 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315 and was not invented by Alnylam. Pfizer further admits that Exhibit 28 at 8 depicted in Paragraph 63 purports to depict the structure above. (Exhibit 28 at 8.)

76.     Upon information and belief, ALC-0315 is in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

**RESPONSE:** Pfizer admits that COMIRNATY® contains ALC-0315, which was not invented by Alnylam. Pfizer denies the remaining allegations of Paragraph 76.

77.     Attached as Exhibit 30 and incorporated herein is a claim chart describing Defendants' infringement of claims 11 and 12 of the '479 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '479 Patent or any other patents.

**RESPONSE:** Pfizer admits that Exhibit 30 of the Complaint purports to be Plaintiff's claim chart for claims 11 and 12 of the '479 Patent. Pfizer denies infringement of any claim of the '479 Patent and any remaining allegations of Paragraph 77.

78.     Defendants have known of the '479 Patent since at least as early as April 25, 2023, when the '479 Patent issued.

**RESPONSE:** Pfizer admits that they have known of the '479 Patent since it issued on April 25, 2023. Pfizer denies the remaining allegations of Paragraph 78.

79.     On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine ALC-0315, which meets every limitation of at least claims 1-4 and 11 of the '480 Patent.

**RESPONSE:** Pfizer admits that COMIRNATY® contains ALC-0315, which was not invented by Alnylam. Pfizer denies that ALC-0315, which was not invented by Alnylam, meets every limitation of claims 1-4 and 11 of the '480 Patent. Pfizer further denies the remaining allegations of Paragraph 79.

80.     Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.  Upon information and belief, ALC-0315 has the chemical structure depicted just below:



(Exhibit 28 at 8.)

**RESPONSE:**   Pfizer admits that 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315 and was not invented by Alnylam. Pfizer further admits that Exhibit 28 at 8 depicted in Paragraph 63 purports to depict the structure above. (Exhibit 28 at 8.)

81.     Upon information and belief, Defendants' ALC-0315 is in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

**RESPONSE:**   Pfizer admits that COMIRNATY® contains ALC-0315, which was not invented by Alnylam. Pfizer denies the remaining allegations of Paragraph 81.

82.     Attached as Exhibit 31 and incorporated herein is a claim chart describing Defendants' infringement of claims 1-4, and 11 of the '480 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '480 Patent or any other patents.

**RESPONSE:** Pfizer admits that Exhibit 31 of the Complaint purports to be Plaintiff's claim chart for claims 1-4 and 11 of the '480 Patent. Pfizer denies infringement of any claim of the '480 Patent and any remaining allegations of Paragraph 82.

83.     Defendants have known of the '480 Patent since at least as early as April 25, 2023, when the '480 Patent issued.  Alnylam notified Defendants of the published '023 Application on June 23, 2022.

**RESPONSE:**  Pfizer admits that they have known of the '480 Patent since it issued on April 25, 2023. Pfizer further admits that Alnylam notified Pfizer and BioNTech of the published '023 Application on June 23, 2022.  Pfizer denies the remaining allegations of Paragraph 83.

## FIRST CAUSE OF ACTION
### (Infringement of the '229 Patent)

84.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

**RESPONSE:**  Pfizer incorporates by reference its responses contained in the foregoing paragraphs.

85.     On information and belief, Defendants have infringed and will continue to infringe at least claims 27 and 28 of the '229 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing Lipid Particles without authority.

**RESPONSE:** Pfizer denies the allegations of Paragraph 85.

86.     Defendants without authority have infringed and will continue to infringe at least claims 27 and 28 of the '229 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing Lipid Particles. Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing Lipid Particles made with Defendants' Infringing Lipid Particles with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '229 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising Defendants' Infringing Lipid Particles with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '229 Patent.

**RESPONSE:** Pfizer denies the allegations of Paragraph 86.

87.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**RESPONSE:** Pfizer denies the allegations of paragraph 87.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**(Infringement of the '657 Patent)**</u>

88.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

**RESPONSE:** Pfizer incorporates by reference its responses contained in the foregoing

paragraphs.

89.     On information and belief, Defendants have infringed and will continue to infringe at least claims 15-19, 22, 23, 26, 28, and 29 of the '657 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing Lipid Particles without authority.

**RESPONSE:** Pfizer denies the allegations of Paragraph 89.

90.     Defendants without authority have infringed and will continue to infringe at least claims 15-19, 22, 23, 26, 28, and 29 of the '657 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing Lipid Particles. Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing Lipid Particles made with Defendants' Infringing Lipid Particles with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '657 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising Defendants' Infringing Lipid Particles with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '657 Patent.

**RESPONSE:** Pfizer denies the allegations of Paragraph 90.

91.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**RESPONSE:** Pfizer denies the allegations of Paragraph 91.

**THIRD CAUSE OF ACTION**
**(Infringement of the '479 Patent)**

92.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

**RESPONSE:**  Pfizer incorporates by reference its responses contained in the foregoing

paragraphs.

93.     On information and belief, Defendants have infringed and will continue to infringe at least claims 11 and 12 of the '479 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sale or importing its COVID-19 Vaccine containing ALC-0315 within the United States and without authority.

**RESPONSE:**  Pfizer denies the allegations of Paragraph 93.

94.     Defendants, without authority, have infringed and will continue to infringe at least claims 11 and 12 of the '479 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing ALC-0315. Each Defendant intends that the others make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that the others will directly infringe Alnylam's '479 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '479 Patent.

**RESPONSE:**  Pfizer denies the allegations of Paragraph 94.

95.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**RESPONSE:**  Pfizer denies the allegations of Paragraph 95.

**FOURTH CAUSE OF ACTION**
**(Infringement of the '480 Patent)**

96.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

**RESPONSE:**  Pfizer incorporates by reference its responses contained in the foregoing

paragraphs.

37

97.     On information and belief, Defendants have infringed and will continue to infringe at least claims 1-4 and 11 of the '480 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing Lipid Particles without authority.

**RESPONSE:** Pfizer denies the allegations of Paragraph 97.

98.     On information and belief, Defendants have infringed and will continue to infringe at least claims 1-4 and 11 of the '480 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sale or importing its COVID-19 Vaccine containing ALC-0315 within the United States and without authority. Defendants, without authority, have infringed and will continue to infringe at least one of the asserted claims of the '480 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing ALC-0315. Each Defendant intends that the others make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that the others will directly infringe Alnylam's '480 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '480 Patent.

**RESPONSE:** Pfizer denies the allegations of Paragraph 98.

99.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**RESPONSE:** Pfizer denies the allegations of Paragraph 99.

## <u>RESPONSE TO PRAYER FOR RELIEF</u>

Pfizer denies all allegations not expressly admitted herein.  The remainder of Plaintiff's Complaint is a prayer for relief, and does not require a response.  To the extent any response is required, Pfizer denies that Plaintiff is entitled to any of the remedies or relief included in clauses (A) through (K) of Plaintiff's Prayer for Relief.

## <u>DEFENDANTS' AFFIRMATIVE DEFENSES</u>

Further answering the Complaint, Pfizer asserts the following defenses without assuming

any burden that they would not otherwise have, including without admitting or acknowledging that they bear the burden of proof as to any of them. Pfizer reserves the right to amend its answer with additional defenses as further information is obtained.

### FIRST AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '479 PATENT)

Pfizer has not infringed any claim of the '479 Patent, either directly or indirectly.

### SECOND AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '480 PATENT)

Pfizer has not infringed any claim of the '480 Patent, either directly or indirectly.

### THIRD AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '657 PATENT)

Pfizer has not infringed any claim of the '657 Patent, either directly or indirectly.

### FOURTH AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '229 PATENT)

Pfizer has not infringed any claim of the '229 Patent, either directly or indirectly.

### FIFTH AFFIRMATIVE DEFENSE
### (INVALIDITY THE '479 PATENT)

Each and every claim of the '479 Patent is invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

### SIXTH AFFIRMATIVE DEFENSE
### (INVALIDITY OF THE '480 PATENT)

Each and every claim of the '480 Patent is invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for

patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

## SEVENTH AFFIRMATIVE DEFENSE
### (INVALIDITY OF THE '657 PATENT)

Each and every claim of the '657 Patent is invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

## EIGHTH AFFIRMATIVE DEFENSE
### (INVALIDITY OF THE '229 PATENT)

Each and every claim of the '229 Patent is invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

## NINTH AFFIRMATIVE DEFENSE
### (PATENT MISUSE)

Plaintiff has sought to enforce the '479, '480, '657 and '229 Patents for products and acts Plaintiff knows are outside the claims of the '479, '480, '657 and '229 Patents rendering the '479, '480, '657 and '229 Patents unenforceable on account of patent misuse.

## TENTH AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

Plaintiff's Complaint fails to state a claim on which relief can be granted.

## ELVENTH AFFIRMATIVE DEFENSE
### (NO COSTS)

Plaintiff is barred by 35 U.S.C. § 288 from recovering any costs associated with this action.

### TWELFTH AFFIRMATIVE DEFENSE
### (ADDITIONAL DEFENSES)

Pfizer reserves the right to assert further defenses in the event that discovery indicates that such defenses would be appropriate.

### COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimants Pfizer Inc. ("Pfizer") and Pharmacia & Upjohn Co. LLC ("Pharmacia") (collectively, "Pfizer" or "Defendants") and BioNTech SE and BioNTech Manufacturing GmbH (collectively, "BioNTech" and with Defendants, "Counterclaimants"), by and through their attorneys, bring the following Counterclaims against Alnylam Pharmaceuticals, Inc. ("Plaintiff" or "Alnylam" or "Counterclaim-Defendant"):

1.      Counterclaimants on personal knowledge as to their own acts, and on information and belief as to all others based on their own and their attorneys' investigation, and without admitting the allegations of Plaintiff other than those expressly admitted herein, bring the following Counterclaims against Alnylam for declaratory judgment that U.S. Pat. Nos. 11,633,479 (the "'479 Patent), 11,633,480 (the "'480 Patent"), 11,612,657 (the "'657 Patent") and 11,590,229 (the "'229 Patent") (collectively the "Patents-in-Suit") are invalid and not infringed by Counterclaimants. Additionally, Counterclaimants bring the following Counterclaim that the '479, '480, '657 and '229 Patents are unenforceable.

2.      Counterclaimants repeat and incorporate by reference each of the foregoing paragraphs of Pfizer's Answer and Affirmative Defenses to the Complaint, as if fully set forth herein.

## THE PARTIES

3.      Pfizer, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 66 Hudson Boulevard, New York, New York 10017.

4.      Pharmacia is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 7000 Portage Road, Kalamazoo, MI 49001. Pharmacia is a subsidiary of Defendant Pfizer, Inc.

5.      BioNTech SE is a corporation organized and existing under the laws of Germany with a principal place of business at An der Goldgrube 12, D-55131 Mainz, Germany.

6.      BioNTech Manufacturing GmbH ("BioNTech Manufacturing") is a corporation organized and existing under the laws of Germany with a principal place of business at An der Goldgrube 12, D-55131 Mainz, Germany. BioNTech Manufacturing is the applicant for the Biologics License Application (BLA) for COMIRNATY® in partnership with Pfizer.

7.      According to its Complaint (D.I. 1), Alnylam is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 675 West Kendall Street, Henri A. Termeer Square, Cambridge, Massachusetts 02142. According to its Complaint, Alnylam is the owner by assignment of the '479, '480, '657 and '229 Patents.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over these Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 based on an actual controversy among the parties arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.

9.      Personal jurisdiction over Alnylam is proper because, *inter alia*, according to its Complaint, Alnylam is a corporation organized and existing under the laws of the State of

Delaware, and because Alnylam has consented to the personal jurisdiction of the Court by commencing its action for patent infringement in this Judicial District, as set forth in its Complaint.

10.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400 based at least on the fact that, according to its Complaint, Alnylam is a corporation organized and existing under the laws of the State of Delaware, and by virtue of the filing by Alnylam of this lawsuit in this venue.

11.     There is an actual justiciable controversy among the parties concerning non-infringement and invalidity of the '479, '480, '657, and '229 Patents.

## <u>CASE AND CONTROVERSY</u>

12.     The '479 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents," states an issue date of April 25, 2023, and names as inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan. Upon information and belief, a true and correct copy of the '479 Patent is attached to the Complaint as Exhibit 1 (D.I. 1-1).

13.     The '480 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents," states an issue date of April 25, 2023, and names as inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan. Upon information and belief, a true and correct copy of the '480 Patent is attached to the Complaint as Exhibit 2 (D.I. 1-1).

14.     The '657 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents," states an issue date of March 28, 2023, and names as inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev,

and Muthiah Manoharan. Upon information and belief, a true and correct copy of the '657 Patent is attached to the Complaint as Exhibit 3 (D.I. 1-1).

15.     The '229 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents," states an issue date of February 28, 2023, and names as inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan. Upon information and belief, a true and correct copy of the '229 Patent is attached to the Complaint as Exhibit 4 (D.I. 1-1).

16.     Upon information and belief, Alnylam is the assignee of all right, title, and interest in the Patents-in-Suit.

17.     An actual, substantial, and justifiable controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Pfizer and Alnylam.

18.     Prior to filing this suit against Pfizer, Alnylam sued Pfizer and BioNTech for infringement of U.S. Pat. Nos. 11,246,933 ("the '933 Patent") and 11,382,979 ("the '979 Patent"). *Alnylam Pharm., Inc. v. Pfizer, Inc. et al.*, 22-cv-336 (D. Del.). Alnylam moved to amend its pleadings in that litigation in order to allege infringement of the '229 Patent against both Pfizer and BioNTech. *Id.* at D.I. 58. This court denied Alnylam's motion to amend its pleadings. Alnylam then filed a Complaint for Patent Infringement regarding the '479, '480, '657, and '229 Patents. *See Alnylam Pharm., Inc. v. Pfizer, Inc., et al.*, Case No. Case 1:22-cv-00578-CFC (D. Del.).

19.     BioNTech faces the risk of a suit for infringement of one or more claims of the Patents-in-Suit. Indeed, prior to filing this suit against Pfizer, Alnylam sued Pfizer and BioNTech for infringement of the '933 Patent and the '979 Patent, and attempted to allege infringement of the '229 Patent against both Pfizer and BioNTech. Additionally, Alnylam has actually filed suit against Pfizer in the present suit. Alnylam has also filed suit alleging infringement of the '479

Patent, the '480 Patent, and the '229 Patent by the other mRNA COVID-19 vaccine manufacturer in the United States. *See Alnylam Pharm., Inc. v. Moderna, Inc.*, C.A. No. 23-580-CFC (D. Del.).

20.     BioNTech faces similar and separate risks of suit against it by Alnylam, at least because BioNTech Manufacturing is the applicant for the BLA for COMIRNATY® in partnership with Pfizer, because BioNTech Manufacturing engages in the manufacture of COMIRNATY® with Pfizer, and because BioNtech's and Pfizer's collaboration agreement is based on both Pfizer's and BioNTech's intent that Pfizer commercialize COMIRNATY® in the United States.

21.     In view of the foregoing, an actual controversy has also arisen between BioNTech and Alnylam with respect to the non-infringement and invalidity of the relevant claims of the '479, '480, '657 and '229 Patents.

22.     This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

23.     Counterclaimants seek a declaration that the '479, '480, '657, and '229 Patents are not, and have not been, infringed and the '479, '480, '657, and '229 Patents are invalid. Counterclaimants additionally seek a declaration that the '479, '480, '657, and '229 Patents are unenforceable.

## **BACKGROUND**

24.     In December of 2019, it was discovered that an outbreak of pneumonia among people who had visited the Huanan Seafood Wholesale Market in Wuhan, China was caused by a novel coronavirus, eventually designated by the World Health Organization ("WHO") as SARS-CoV-2 with the disease it causes reclassified as Coronavirus disease 2019 ("COVID-19").

25.     COVID-19 quickly spread around the world and tore through populations that were immunologically naïve, threatening the collapse of the healthcare system and loss of life at scales

not seen since the advent of modern medicine. What began first as small area lockdowns to prevent the transmission of disease and temporary stay at home orders eventually became society altering restrictions. Many saw the only path out of the pandemic as the development of successful vaccines against the disease.

26.     BioNTech first began working on messenger RNA ("mRNA")-based clinical vaccine candidates in the early- to mid-2010s, earning itself a reputation as an industry leader in mRNA technology. BioNTech partnered with several companies and research institutes to develop mRNA-based clinical vaccines.

27.     BioNTech also licensed technology from multiple partners. In particular, BioNTech had licensed a synthetic lipid known as ALC-0315, otherwise known by its IUPAC name [4-hydroxybutyl)azanediyl]di(hexane-6,1-diyl) bis(2-hexyldecanoate) from Acuitas Therapeutics Inc. ("Acuitas"), formerly known as Alcana Technologies.

28.     On January 10, 2020, the Chinese Center for Disease Control published the genetic sequence of SARS-CoV-2.

29.     BioNTech scientists set to work on developing a COVID-19 vaccine. BioNTech was able to do so by building on its existing development work and experience with mRNA-based clinical vaccine candidates. BioNTech had identified a product candidate—then known as BNT162—as a potential mRNA-based vaccine that would protect against COVID-19.

30.     In March 2020, Pfizer and BioNTech began a collaborative effort focused on bringing a COVID-19 vaccine to market. The vaccine that ultimately emerged from this partnership was a novel mRNA vaccine now known as COMIRNATY®.

31.     Clinical trials of Pfizer/BioNTech vaccine candidates began in late April of 2020, with preliminary results demonstrating their safety and efficacy published in merely six months.

46

32.     On November 20, 2020, Pfizer, on behalf of itself and BioNTech, submitted its clinical trial data as part of its Emergency Use Authorization ("EUA") request to the Food and Drug Administration ("FDA") for administering its mRNA vaccine to people 16 years of age and older.

33.     On December 10, 2020, the FDA granted the first EUA for a COVID-19 vaccine to Pfizer and BioNTech's mRNA vaccine with vaccinations rolling out immediately thereafter, reflecting the fastest development of a vaccine in history.

34.     The FDA provided Pfizer and BioNTech's vaccine with full approval on August 23, 2021, upon which it was given the trade name, COMIRNATY®.

35.     Since being given EUA, millions of doses of COMIRNATY® have been administered worldwide, resulting in countless number of lives saved while easing the strain of an otherwise uncontrollable pandemic.

36.     On May 26, 2023, Alnylam sued Pfizer for infringement of the '479, '480, '657 and '229 Patents, alleging that Pfizer had incorporated the claimed subject matter of the '479, '480, '657 and '229 Patents into COMIRNATY® in an infringing manner.

37.     On information and belief, Alnylam's efforts with Vir Biotechnology to develop a COVID-19 anti-viral therapy proved unsuccessful and were discontinued.

38.     On information and belief, Alnylam never attempted to develop a COVID-19 vaccine alone or in collaboration with any other party.

39.     On information and belief, Alnylam never developed a vaccine using its allegedly inventive lipid technology alone or in collaboration with any other party.

40.     Alnylam's alleged lipid technology is not a COVID vaccine.

41.     Alnylam's alleged lipid technology has never been included in a COVID vaccine.

42.     In view of the foregoing, a conflict of asserted rights has arisen between Counterclaimants and Alnylam with respect to the non-infringement and invalidity of the Patents-in-Suit. Additionally, a further conflict exists between Counterclaimants and Alnylam due to misuse of the relevant claims of the '479, '480, '657 and '229 Patents.

### PROSECUTION HISTORY OF FAMILY OF THE PATENTS-IN-SUIT

43.     The Patents-in-Suit claim priority back to three previous U.S. Patent Applications and two provisional patent applications.

44.     Alnylam filed its first provisional patent application in this family, U.S. Provisional Patent Application No. 61/568,133 (the "'133 Application"), on December 7, 2011.

45.     The claims of the '133 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head group.

46.     The claims of the '133 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with carbon based central moieties, represented by (*) in the formula below.

47.     The compound defined by Formula (I) recited by claim 1 is representative:



Formula (I)

48.     The '133 Application expired on December 9, 2012.

48

49. Alnylam filed a second provisional patent application in this family, U.S. Provisional Patent Application No. 61/623,274 (the "'274 Application"), on April 12, 2012.

50. The claims of the '274 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups.

51. The claims of the '274 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with carbon based central moieties, represented by (*) in the formula below.

52. The compound defined by Formula (I) recited by claim 1 is representative:



Formula (I)

53. The '274 Application expired on April 14, 2013.

54. Alnylam filed its first non-provisional patent application in this family, U.S. Patent Application No. 13/708,383 (the "'383 Application"), on December 7, 2012.

55. The claims of the '383 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups.

56. The claims of the '383 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with carbon based central moieties, represented by (*) in the formula below.

57. The compound defined by Formula (I) recited by claim 1 is representative:

49

Formula (I)

58.     The '383 Application issued as U.S. Pat. No. 9,061,063 (the "'063 Patent"), on June 23, 2015.

59.     The claims of the '063 Patent cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups.

60.     The claims of the '063 Patent cover both specific compounds and compounds defined by formulas, all of which are compounds with carbon based central moieties, represented by (*) in the formula below.

61.     The compound defined by Formula (III) recited by claim 1 is representative:



Formula (III)

62.     Formulas I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII of the '063 Patent describe lipids.

63.     Each of Formula I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII of the '063 Patent requires the lipid to have a nitrogen atom in the head group.

64.     Each of Formula I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII of the '063 Patent requires the lipid to have a head group that is protonatable (e.g., a head group with a tertiary nitrogen atom) or permanently positively charged (e.g., a head group with a quaternary nitrogen atom).

65.     Each example of a Primary Group according to Formula VIII of the '063 Patent has a nitrogen atom in the head group portion of the Primary Group.

66.     Each example of a Primary Group according to Formula VIII of the '063 Patent has a protonatable (e.g., a tertiary nitrogen atom) head group.

67.     Each of the head group examples in Table 1A of the '063 Patent includes a nitrogen atom.

68.     Each of the head group examples in Table 1A of the '063 Patent includes a nitrogen atom that is protonatable (e.g., a tertiary nitrogen atom) or has a permanent positive charge (i.e., a quaternary nitrogen atom).

69.     Each of the Primary Group examples in Table 1B of the '063 Patent has a head group with a nitrogen atom.

70.     Each of the Primary Group examples in Table 1B of the '063 Patent has a head group with a nitrogen atom that is protonatable (e.g., a tertiary nitrogen atom) or has a permanent positive charge (i.e., a quaternary nitrogen atom).

71.     Each of the head group examples in Table 2A of the '063 Patent includes a nitrogen atom.

72.     Each of the head group examples in Table 2A of the '063 Patent includes a nitrogen atom that is protonatable (e.g., a tertiary nitrogen atom) or has a permanent positive charge (i.e., a quaternary nitrogen atom).

73.     Each lipid in Table 3 of the '063 Patent has a head group with a nitrogen atom.

74.     Each lipid in Table 3 of the '063 Patent has a head group that is protonatable (e.g., a head group with a tertiary nitrogen atom) or has a permanent positive charge (e.g., a head group with a quaternary nitrogen atom).

75.     Each of the lipids described in Examples 1 to 37 have a head group with a nitrogen atom.

76.     Each of the lipids described in Examples 1 to 37 have a head group that is protonatable (e.g., a head group with a tertiary nitrogen atom) or has a permanent positive charge (e.g., a head group with a quaternary nitrogen atom).

77.     Each of Formulas I, II, III, IIIa, IV, V, VIA, VIB, VII, and VIII in the '063 Patent requires a carbon atom at the central moiety.

78.     Each cationic lipid example in the '063 Patent has a carbon atom at the central moiety.

79.     Each of the later-issued patents in the '063 Patent family, including the Patents-in-Suit, has the same written description as the '063 Patent.

80.     Alnylam filed its second non-provisional patent application in this family, U.S. Patent Application No. 14/677,801 (the "'801 Application"), on April 2, 2015.

81.     The claims of the '801 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups.

82.     The claims of the '801 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with carbon based central moieties, represented by (*) in the formula below.

83.     The compound defined by Formula (III) recited by claim 1 is representative:



Formula (III)

84.     The '801 Application issued as U.S. Pat. No. 10,369,226 (the "'226 Patent"), on August 6, 2019.

85.     The claims of the '226 Patent cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups.

86.     The claims of the '226 Patent cover both specific compounds and compounds defined by formulas, all of which are compounds with carbon based central moieties, represented by (*) in the formula below.

87.     The compound defined by Formula (III) recited by claim 1 is representative:

Formula (III)



88.     Alnylam filed a third non-provisional patent application in this family, U.S. Patent Application No. 16/520,183 (the "'183 Application"), on July 23, 2019.

89.     The claims of the '183 Application cover processes for creating individual compounds defined by formulas, all of which are compounds with nitrogen containing head groups.

90.     The claims of the '183 Application cover processes for creating individual compounds defined by formulas, all of which are compounds with carbon based central moieties.

91.     The compound generated by the process of claim 39 is representative:



92.     The '183 Application issued as U.S. Pat. No. 11,071,784 (the "'784 Patent"), on July 27, 2021.

93.     The claims of the '784 Patent recite a single compound, as shown below:

94.     The compound claimed by the '784 Patent is a precursor molecule that is used in the synthesis of the compound described in claim 39 of the '183 Application.

95.     On April 9, 2021, the structure of each of the lipid components of the LNP included in COMIRNATY®, including ALC-0315, was published in Schoenmaker et al., "mRNA-Lipid Nanoparticle COVID-19 Vaccines: Structure and Stability" 601 INTERNATIONAL J. OF PHARMACEUTICS 1-13, at 8 (2021).

96.     Immediately after disclosure of the structure of the lipids used in COMIRNATY®, Alnylam filed a fourth non-provisional patent application in this family, U.S. Patent Application No. 17/302,311 (the "'311 Application") on April 29, 2021 which issued as the '933 Patent (one of the two patents-in-suit in *Alnylam Pharm., Inc. v. Pfizer, Inc. et al.*, 22-cv-336 (D. Del.)) on February 15, 2022.

97.     The '311 Application is the first application in this family which, on its face, purports to claim a compound that does not have a nitrogen containing head group or a carbon based central moiety.

98.     For instance, claims 1 and 3 as originally filed read:

> 1.     A cationic lipid comprising a primary group and two biodegradable hydrophobic tails, wherein (a) the primary group comprises a protonatable group having a pKa of from about 4 to about 13, (b) the cationic lipid has an *in vivo* half life (t1/2) of less than about 3 hours, and (c) at least one of the hydrophobic tails has the formula –(hydrophobic chain)-(biodegradable group)-(hydrophobic chain) where the terminal hydrophobic chain in the hydrophobic

tail is a branched alkyl group, where the branching occurs at the *a*-position relative to the biodegradable group.

2.     The cationic lipid of claim 1, wherein the primary group includes (i) a head group, and (ii) a central moiety to which both the biodegradable hydrophobic tails are directly bonded.

3.     The cationic lipid of claim 2, wherein the central moiety is selected from the group consisting of a central carbon atom, a central nitrogen atom, a central carbocyclic group, a central aryl group, a central heterocyclic and a central heteroaryl group.

99.     The '311 Application was filed after the structure of the cationic lipid incorporated into COMIRNATY®, ALC-0315, was published.

100.     On information and belief, Alnylam filed the '311 Application after Alnylam became aware of the structure of the ALC-0315 lipid in COMIRNATY®.

101.     The '311 Application issued as U.S. Pat. No. 11,246,933 ("the '933 Patent") on February 15, 2022.

102.     Alnylam continued the prosecution of additional patents in this family with narrower claims, including for example, claims reciting "wherein the head group consists of a saturated aliphatic group and a hydroxyl group" or "the central moiety is a nitrogen atom."

103.     The Patents-in-Suit at issue here, the '479 Patent, the '480 Patent, the '657 Patent, and the '229 Patent, were all filed as continuations from the '933 Patent, and issued no earlier than February of this year.

104.     The '029 Application was filed on February 14, 2022 as a continuation from the '933 Patent and issued as the '229 Patent on February 28, 2023.

105.     The '029 Application is the first application in this family that purports to claim a compound with a head group that is limited to a saturated aliphatic group and a hydroxyl group.

106. For instance, claim 28 as originally filed reads:

28. (New) The pharmaceutical composition of claim 20, wherein the head group consists of a saturated aliphatic group and a hydroxyl group.

107. None of the lipid formulas (Formulas I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII) of the '029 Application allow for a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

108. The '029 Application does not include any specific examples of a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

109. The '029 Application is also the first application in this family that purports to claim a vaccine, as originally filed.

110. For instance, claim 23, as originally filed, depended from claim 20 and read:

The pharmaceutical composition of claim 20, wherein the pharmaceutical composition is a vaccine.

111. The '029 Application does not include any working or theoretical examples of a vaccine.

112. The '038 Application was also filed on February 14, 2022 as a continuation of the '933 Patent and issued as the '657 Patent on March 28, 2023.

113. The '038 Application also purports to claim a compound with a head group that is limited to a saturated aliphatic group and a hydroxyl group.

114. For instance, claim 28 as originally filed reads:

28. (New) The pharmaceutical composition of claim 20, wherein the head group consists of a saturated aliphatic group and a hydroxyl group.

115. None of the lipid formulas (Formulas I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII) of the '038 Application allow for a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

116. The '038 Application does not include any specific examples of a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

117. The '038 Application also purports to claim a vaccine.

118. For instance, claim 22, as originally filed, depended from claim 20 and read:

> The pharmaceutical composition of claim 20, wherein the pharmaceutical composition is a vaccine.

119. The '038 Application does not include any working or theoretical examples of a vaccine.

120. The '017 Application was also filed on February 14, 2022 as a continuation of the '933 Patent and issued as the '479 Patent on April 25, 2023.

121. The '017 Application also purports to claim a compound with a head group that is limited to a saturated aliphatic group and a hydroxyl group.

122. For instance, claim 23 as originally filed reads:

> 23. (New) The lipid compound of claim 20, wherein the head group consists of a saturated aliphatic group and a hydroxyl group.

123. None of the lipid formulas (Formulas I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII) of the '017 Application allow for a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

124. The '017 Application does not include any specific examples of a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

125. The '023 Application was also filed on February 12, 2022 as a continuation of the '933 Patent and issued as the '480 Patent on April 25, 2023.

126. The '023 Application also purports to claim a compound with a head group that is limited to a saturated aliphatic group and a hydroxyl group.

127. For instance, claim 23 as originally filed reads:

> 23. (New) The lipid compound of claim 20, wherein the head group consists of a saturated aliphatic group and a hydroxyl group.

128. None of the lipid formulas (Formulas I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII) of the '023 Application allow for a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

129. The '023 Application does not include any specific examples of a lipid with a head group that consists of a saturated aliphatic group and a hydroxyl group.

130. Alnylam continues to prosecute additional applications in this family.

131. For instance, Alnylam received U.S. Patent No. 11,679,158 on June 20, 2023 which claims priority to the '933 Patent.

132. Alnylam filed U.S. Application No. 18/304,097 on April 20, 2023 which claims priority to the '933 Patent.

## COUNT I – DECLARATION OF NON-INFRINGEMENT OF THE '229 PATENT

133. Counterclaimants incorporate by reference paragraphs 1 through 132 of its Counterclaims as if fully set forth herein.

134. This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between Counterclaimants and Alnylam concerning infringement of the '229 Patent.

135. Alnylam has accused Counterclaimants of activities that it claims infringe the '229 Patent.

136.    Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '229 Patent.

137.    Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '229 Patent.

138.    This is an exceptional case under 35 U.S.C. § 285, entitling counterclaimants to an award of attorneys' fees incurred in connection with this matter.

## COUNT II – DECLARATION OF NON-INFRINGEMENT OF THE '657 PATENT

139.    Counterclaimants incorporate by reference paragraphs 1 through 138 of its Counterclaims as if fully set forth herein.

140.    This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between Counterclaimants and Alnylam concerning infringement of the '657 Patent.

141.    Alnylam has accused Counterclaimants of activities that it claims infringe the '657 Patent.

142.    Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '657 Patent.

143.    Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '657 Patent.

144.    This is an exceptional case under 35 U.S.C. § 285, entitling counterclaimants to an award of attorneys' fees incurred in connection with this matter.

## COUNT III – DECLARATION OF NON-INFRINGEMENT OF THE '479 PATENT

145.    Counterclaimants incorporate by reference paragraphs 1 through 144 of its Counterclaims as if fully set forth herein.

146.    This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between Counterclaimants and Alnylam concerning infringement of the '479 Patent.

147.    Alnylam has accused Counterclaimants of activities that it claims infringe the '479 Patent.

148.    Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '479 Patent.

149.    Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '479 Patent.

150.    This is an exceptional case under 35 U.S.C. § 285, entitling counterclaimants to an award of attorneys' fees incurred in connection with this matter.

## COUNT IV –DECLARATION OF NON-INFRINGEMENT OF THE '480 PATENT

151.    Counterclaimants incorporate by reference paragraphs 1 through 150 of its Counterclaims as if fully set forth herein.

152.    This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between Counterclaimants and Alnylam concerning infringement of the '480 Patent.

153.     Alnylam has accused Counterclaimants of activities that it claims infringe the '480 Patent.

154.     Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '480 Patent.

155.     Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '480 Patent.

156.     This is an exceptional case under 35 U.S.C. § 285, entitling counterclaimants to an award of attorneys' fees incurred in connection with this matter.

**COUNT V – DECLARATION OF INVALIDITY OF THE '229 PATENT**

157.     Counterclaimants incorporate by reference Paragraphs 1 through 156 of its Counterclaims as if fully set forth herein.

158.     The claims of the '229 Patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

159.     Counterclaimants are entitled to a declaratory judgment from this Court that the '229 Patent is invalid.

**COUNT VI – DECLARATION OF INVALIDITY OF THE '657 PATENT**

160.     Counterclaimants incorporate by reference Paragraphs 1 through 159 of its Counterclaims as if fully set forth herein.

161.     The claims of the '657 Patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of

35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

162.    Counterclaimants are entitled to a declaratory judgment from this Court that the '657 Patent is invalid.

## COUNT VII – DECLARATION OF INVALIDITY OF THE '479 PATENT

163.    Counterclaimants incorporate by reference Paragraphs 1 through 162 of its Counterclaims as if fully set forth herein.

164.    The claims of the '479 Patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

165.    Counterclaimants are entitled to a declaratory judgment from this Court that the '479 Patent is invalid.

## COUNT VIII – DECLARATION OF INVALIDITY OF THE '480 PATENT

166.    Counterclaimants incorporate by reference Paragraphs 1 through 165 of its Counterclaims as if fully set forth herein.

167.    The claims of the '480 Patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq.*, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

168.    Counterclaimants are entitled to a declaratory judgment from this Court that the '480 Patent is invalid.

## COUNT IX – DECLARATION OF PATENT MISUSE

169.    Counterclaimants incorporate by reference Paragraphs 1 through 168 of their Counterclaims as if fully set forth herein.

170.    Alnylam has sought to enforce and/or license the patents-in-suit for products and acts they know are outside the claims of the Patents-In-Suit.

171.    Prior to learning of the lipid components in COMIRNATY®, Plaintiff only prosecuted claims in the family of the Patents-in-Suit to compounds with a nitrogen containing head group.

172.    After learning of the lipid components in COMIRNATY®, Plaintiff prosecuted claims in the family of the Patents-in-Suit that Plaintiff alleges encompass compounds that do not have a nitrogen containing head group.

173.    All the lipids according to Formulas I, II, III, IIIA, IV, V, VIA, VIB, VII, and VIII or otherwise specifically disclosed in Table 3 and in Examples 1-37 of the Patents-in-Suit have a nitrogen atom in the head group.

174.    All the head groups according to Tables IA and 2A in the Patents-in-Suit have a nitrogen atom.

175.    All the primary groups in Table 1B in the Patents-in-Suit have nitrogen in the head group.

176.    Alnylam only began prosecuting the claims of the Patents-in-Suit, directed to a class of compounds and silent on their face as to the presence of nitrogen in the head group, after the lipid components of the COMIRNATY® were published and years after the alleged priority date of the Patents-in-Suit.

177.    There is no support for the claims of the Patents-in-Suit in their shared specification.

178.    Alnylam continues to prosecute child applications.

179.    Alnylam's conduct in seeking to license and enforce the Patents-in-Suit against products and acts it knows to be outside the scope of the claims of the Patents-in-Suit, and outside the scope of what Alnylam actually invented, is an attempt to seek an improper economic benefit.

180.    Alnylam has engaged in a course of conduct that seeks to broaden the scope of the Patents-in-Suit with anticompetitive effect.

181.    Alnylam's misuse of the Patents-in-Suit renders the Patents-in-Suit unenforceable.

## **RELIEF REQUESTED**

WHEREFORE, Counterclaimants respectfully request that the Court enter a Judgment and Order in their favor and against Plaintiff as follows:

(a)    Dismissing Alnylam's Complaint with prejudice and denying each and every prayer for relief contained therein;

(b)    Declaring that Counterclaimants do not infringe any claim of the '229, '657, '479, and '480 Patents;

(c)    Declaring that the manufacture, use, offer to sell, and sale of COMIRNATY® within the United States, and its importation into the United States, does not infringe any claim of the '229 Patent;

(d)    Declaring that the manufacture, use, offer to sell, and sale of COMIRNATY® within the United States, and its importation into the United States, does not infringe any claim of the '657 Patent;

(e)    Declaring that the manufacture, use, offer to sell, and sale of COMIRNATY® within the United States, and its importation into the United States, does not

infringe any claim of the '479 Patent;

(f)    Declaring that the manufacture, use, offer to sell, and sale of COMIRNATY® within the United States, and its importation into the United States, does not infringe any claim of the '480 Patent;

(g)    Declaring that the claims of the '229 Patent are invalid;

(h)    Declaring that the claims of the '657 Patent are invalid;

(i)    Declaring that the claims of the '479 Patent are invalid;

(j)    Declaring that the claims of the '480 Patent are invalid;

(k)    Declaring that the '229, '657, '479 and '480 Patents are unenforceable against Counterclaimants under the doctrine of patent misuse;

(l)    Declaring that Alnylam and its agents, representatives, attorneys, and those persons in active concert or participation with them who receive actual notice thereof, be preliminarily and permanently enjoined from threatening or initiating infringement litigation against Counterclaimants or any of their customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors, or customers of Counterclaimants, or charging any of them either orally or in writing with infringement of the '229, '657, '479 and '480 Patents.

(m)    Awarding Counterclaimants their attorneys' fees, together with costs and disbursements, including because this case is exceptional under 35 U.S.C. § 285; and

(n)    Awarding such other and further relief as the Court deems justified.

DATE: July 17, 2023

CONNOLLY GALLAGHER, LLP

*/s/ Arthur G. Connolly, III*
Arthur G. Connolly, III (#2667)
Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
asilverstein@connollygallagher.com

OF COUNSEL:

Sara Tonnies Horton
WILLKIE FARR & GALLAGHER
300 North LaSalle Drive
Chicago, IL 60654
(312) 728-9040

Michael Johnson
Dan Constantinescu
Brian Frino
WILLKIE FARR & GALLGHER
787 Seventh Avenue New York, NY 10019
(212) 728-8000

*Attorneys for Defendants and*
*Counterclaimants Pfizer Inc. and*
*Pharmacia & Upjohn Co. LLC*

MORRIS, NICHOLS, ARSHT
& TUNNEL LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Charles B. Klein
Jovial Wong
Claire A. Fundakowski
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
(202) 282-5000

Katherine L. Kyman
Brian L. O'Gara
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-5600

Ashley Graham
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700

*Attorneys for Counterclaimants BioNTech*
*SE and BioNTech Manufacturing GmbH*